UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE:  SILOAM SPRINGS MUNICIPAL PROPERTY
OWNERS' IMPROVEMENT DISTRICT NO 1 --
GABRIEL PARK, DEBTOR                              CASE NO.  5:12-bk-73750
                                                                    (Chapter 9)

## CHAPTER 9 PLAN OF DEBT ADJUSTMENT

The Siloam Springs Municipal Property Owners' Improvement District No. 1 – Gabriel Park (the "Debtor"), Chapter 9 Debtor, proposes the following Plan for the adjustment of the Debtor's debts pursuant to Chapter 9 of the Bankruptcy Code:

### ARTICLE I.

### DEFINITIONS

For the purposes of this Plan, the following terms shall have the meanings specified below.  Any term used in the Plan that is not defined herein, but that is defined in the United States Bankruptcy Code or the Federal Rules Bankruptcy Procedure, shall have the meaning assigned to that term by the Bankruptcy Code or Rules.

1.1   "Administrative Claim" means the Claim of any kind specified in §507(a)(1) of the Code.

1.2   "Allowed Claim" means any Claim in the amount and classification set forth in a Proof of Claim filed with the Court within the time fixed by the Court, or in the absence of such filing, unless the claim was listed by the Debtor as disputed, contingent or unliquidated, as set forth in the Debtor's List of Creditors and Amended List of Creditors filed in the case, in any event as to which no objection to the allowance thereof has been interposed within the applicable period fixed in the Plan or the

Confirmation Order, or as to which any such objection has been determined by an Order of the Court providing for allowance. Multiple claims in the same Class held by a Creditor or Proofs of Claim filed by a Creditor shall be aggregated and constitute a single Claim.

1.3   "Allowed General Unsecured Claim" means a General Unsecured Claim that is an Allowed Claim.

1.4    "Code" shall mean the provisions of Title 11 of the United States Code, the United States Bankruptcy Code.

1.5   "Bond Trustee" shall mean the Bank of Fayetteville, Fayetteville, Arkansas, or any Successor thereto.

1.6   "Commissioners" are the governing body of the District, consisting of two (2) individuals appointed by the City of Siloam Springs, Arkansas.

1.7   "Depository Trust Company" (DTC) of New York, New York, the electronic depository for the bonds issued by the District, and to whom Plan distributions to Class 2 claimants shall be made.

1.8   "District" is the Debtor, the Siloam Springs Municipal Property Owners' Improvement District No. 1 - Gabriel Park, created under appropriate Arkansas law.

1.9    "Effective Date" shall mean eleven (11) days after the Order of Confirmation has been entered upon the Court's docket, and no Notices of Appeal have been filed with the Court.

1.10   "Impaired" shall have the meaning provided in §1124 of the Code.

1.11   "Lien" has the meaning provided by §101 of the Code.

1.12 "Order of Confirmation" means the Order of the Court Confirming the Plan pursuant to §1129 of the Code.

1.13 "Petition Date" means the date on which the Debtor filed its Chapter 9 petition with the Clerk of the Court, October 4, 2012.

1.14 "Plan" means this Debtor's Plan of Debt Adjustment in its present form or as it may be amended, modified or supplemented.

1.15 "Pro Rata" means proportionately so that the ratio of the amount of the Distribution made on account of a particular Allowed Claim to the Distributions made on account of all Allowed Claims in the Class in which the particular Allowed Claim is included is the same as the ratio of the amount of such particular Allowed Claim to the total amount of the Allowed Claims of the Class in which such particular Allowed Claim is included.

1.16 "Unclaimed Distributions" means any Distributions which are unclaimed within one (1) year following the date of distribution. Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been paid, (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address with which to mail or deliver such property, and (d) interest on cash constituting Unclaimed Property.

1.17 "Unsecured Claim" means a Claim that is not secured by any Lien on Property of the Debtor.

1.18 The "Bankruptcy Rules", shall mean the Federal Rules of Bankruptcy Procedure.

## ARTICLE II.

## CONSTRUCTION

2.1     Where not inconsistent or in conflict with the provisions of the Plan, the words and phrases used in the Plan shall have the meanings provided in the Code or the Bankruptcy Rules.

2.2     Section captions used in the Plan are for convenience only, and shall not affect the construction of the Plan.

2.3     The first letters of terms defined in the Plan are capitalized.

## ARTICLE III.

## CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions shall apply to this Plan:

3.1     To the extent any Claim or portion of any Claim of a Creditor is a Disputed Claim, or is otherwise contingent or unliquidated, or has not been allowed by the Court, the District may either reserve and segregate such Distribution under the Plan as is sufficient to provide for each of such Claims under the Plan, ask the Court to determine an appropriate reserve, or ask the Court to estimate for purposes of allowance any contingent or unliquidated Claim which would otherwise delay the administration of the Case.

3.2     Pursuant to §§901(a) and 1122(a) of the Code, Article V of the Plan designates one (1) Class of Claims, the Bondholders.  As set forth below, Claims of the kind specified in §507(a)(1) of the Code have not been classified and are excluded from those set forth in Article V of the Plan, in accordance with §1123 (a)(1) of the Code.  A Claim shall be deemed classified in a particular Class only to the extent that the Claim

qualifies within the description of that Class and shall be deemed classified in a similar Class to the extent that any remainder of the Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.  Multiple Proofs of Claim filed by a Creditor which qualify for inclusion within the same Class shall be aggregated and, if allowed, shall constitute a single Allowed Claim.

## ARTICLE IV.

## UNCLASSIFIED ADMINISTRATIVE CLAIMS

The holders of Administrative Claims shall receive on account of such Claims payment in the amount of such Claims on or before the Effective Date of the Plan or as soon thereafter is practicable.  Notwithstanding the foregoing, Administrative Claims incurred by the District in the ordinary course of business shall be paid in accordance with the applicable ordinary business terms.  With the exception of Administrative Claims for fees and/or costs of professionals employed by the District and Administrative Claims incurred in the ordinary course of business, all parties seeking payment of Administrative Claims must file a request for payment with the Clerk of the Court on or before thirty (30) days after the Confirmation Date.  The District's bankruptcy counsel, John T. Lee, was paid $12,000.00 for his services herein.  The District's legal counsel, James N. McCord, was paid $8,000.00 for services herein and to conclude this matter and to consummate the Plan.  The Bank of Fayetteville, Bond Trustee, will have no further fees or charges in this matter.  Costs of this proceeding, filing fee and publication charges have been paid as incurred, as have mowing charges for the lot owned by the District.

## ARTICLE V.

### DESIGNATION OF CLASSES OF CLAIMS

Claims are classified under the Plan as follows:

5.1    **Class 1 (Bondholders).**  The Claims of holders of the bonds of the District with respect to payment of the bonds.  The District issued five (5) bond certificates in varying amounts in the combined principal amount of $570,000.00. Bonds in the principal amount of $345,000.00 remain unpaid. The bonds were issued as fully registered securities in the "street name" of CEDE & Company, as nominee for the Depository Trust Company (DTC) in New York City.  DTC acts as the securities depository for the bonds and is the world's largest depository.  The bonds were purchased through "DTC participants", such as brokerage firms and "safekeeping agents", who received a credit in the records of the DTC.  The ownership interests of all purchasers of the bonds, the "beneficial owners", are in turn reflected in the records of the "DTC participants".  The identity of the "DTC participants" has been ascertained from DTC.  The "beneficial owners" of the bonds are largely unknown to the District. The District's Disclosure Statement and this Plan, along with the Notice of Hearing thereon and other documents, have been sent to the DTC and to all "DTC participants", who have a fiduciary duty to forward the same to the actual owners, the "beneficial owners".

## ARTICLE VI.

### TREATMENT OF CLASSES IMPAIRED UNDER THE PLAN

6.1    **Class 1 (Bondholders).**  This class is impaired.  On account of the Allowed Claims of Bondholders and in full satisfaction thereof, the Bondholders shall be

paid the funds the Bond Trustee currently has on hand, approximately $132,000.00, less the reserve for mowing and maintenance of $1,500.00 for Lot 1, pending its sale. These funds shall be paid to the Depository Trust Company (DTC) for prorata distribution to the DTC participants, based on the principal amounts of the bonds. The participants shall in turn make distribution to the beneficial owners.

Bondholders will also receive one-half (½) of the net proceeds from the sale of Lot 1 of Gabriel Park Subdivision, which is jointly owned with Arlands, LLC, as was fully detailed in the Debtor's Disclosure Statement approved by the Court's Order entered July 18, 2013. The lot is listed for sale with a Siloam Springs Realtor at $26,000.00. An actual sale price is unknown. The lot has been for sale for several years with no success. The market in Siloam Springs is showing an upturn this year.

Payments to bondholders will be prorata based only upon the principal amounts of the bonds owned. The District does not dispute these amounts owed and bondholders will be treated as allowed claims.

When Lot 1 is sold, the District will pay costs of sale, to include brokerage commissions, and other expenses as would be incurred in any similar sale, e.g., title insurance, recording fees, revenue stamps, closing charges and legal fees for deed preparation, etc. One-half (½) of the net proceeds of the sale will be forwarded to the Bond Trustee.

When the lot is sold, the Bond Trustee will distribute the proceeds of sale to the Depository Trust Company (DTC), who will make prorata distribution to the DTC participants based upon the principal amount of the bonds. These participants will in turn make distributions prorata to the beneficial owners in fulfillment of their fiduciary

336575-v1

7

duties.  The length of time required to sell the lot is, given market conditions, unknown.  The District reserves the right to sell the lot by public auction to the highest bidder, if the Commissioners deem that to be in the Bondholders' best interests, after consultation with the co-owner and failure of a private sale to be arranged within a reasonable period of time.  It is anticipated that the District will expend approximately $750.00 annually for mowing and maintenance.  Any sums not so expended shall be paid to Bondholders as set forth herein.

      6.2    **Cramdown.**  In the event that any Class entitled to vote on the Plan shall fail to accept the Plan in accordance with §§901(a) and 1129(a)(8) of the Code, the Debtor requests that the Court confirm the Plan in accordance with §1129(b) of the Code.

ARTICLE VII.

**MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN**

7.1    **Funding the Plan.**  The Plan will be funded using the funds the District has on hand, approximately $132,000.00, less a reserve for up to two (2) years for the Bond Trustee's charges; and two (2) years reserve for anticipated mowing and maintenance costs, ($1,500.00). See Paragraph 6.1., above.  As mentioned, the Bond Trustee will have no further charges or fees.

Unpaid special taxes or assessments levied upon the lots in Gabriel Park Subdivision by the District as the means and source of revenue with which the District was to pay the bonds it issued shall be cancelled and eliminated as to all lots therein, if any remain.  The District believes that there are no unpaid assessments.  The Commissioners of the District have determined that sale of the lot it owns with those

taxes imposed will be impracticable without cancelling the same, given the real estate market in Northwest Arkansas, i.e., an enormous number of lots and subdivisions in the area that are for sale that have no such assessments.

    7.2    **Disbursements.**  The Bond Trustee will make disbursement to the "beneficial owners" of the District's Bonds from the net proceeds of the sale of Lot 1 within thirty (30) days after receiving the same, by paying such proceeds and all other funds it may hold to the Depository Trust Company (DTC) with instructions that prorata distributions be made to the DTC "participants", who will make prorata distribution to said "beneficial owners".

    The Bond Trustee will make disbursement of the District's funds it holds, approximately $132,000.00, less the reserves mentioned in Paragraph 7.1., above, within thirty (30) days following the Effective Date of the Plan by paying the same to the Depository Trust Company (DTC) with instructions that prorata distributions be made to the DTC "participants", who will distribute the same prorata to their customers, the "beneficial owners".

    7.3    **Reserve for Disputed Claims.**  The District does not dispute the claims of Bondholders, should such disputes develop. On and after the Effective Date, the District will reserve Distributions for the holders of Disputed Claims in a segregated account (the "Unclaimed/Disputed Claims Reserve") for the benefit of the holders of the Disputed Claims entitled thereto under the Plan.  Except to the extent that the Court shall have estimated under §502(c) of the Code or otherwise determined that a good and sufficient reserve for Disputed Claims is less than the full amount thereof, there will be deposited into the Disputed Claims Reserve an amount of cash which would have

been disbursed on account of all Disputed Claims, if all Disputed Claims were allowed in the full amount claimed by the holders thereof.  At such time as a Disputed Claim becomes an Allowed Claim, the Distribution that would have been disbursed had the Disputed Claims been an Allowed Claim on the Effective Date shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim within thirty (30) days.  At such time as all Disputed Claims have been finally determined, the balance of the cash not theretofore distributed will be distributed Pro Rata to the holders of Allowed Claims in Class 1 in accordance with Paragraph 7.2 herein.

7.4    **Post-Confirmation Operations.**  The District will continue to exist to consummate the Plan and the Trustee will make distributions as provided thereunder, and upon completion of such Distributions, the Commissioners may wind up the affairs of the District, and terminate it.

7.5    **Execution and Delivery of Documents.**  The Debtor is authorized to make, execute, deliver, and record documents and instruments as are necessary or appropriate to promote and implement Consummation of the Plan or to carry out the purposes of the Plan.

7.6    **Objection to Claims and Interests.**  Any objection to any Claim shall be filed on or before 30 days after the Effective Date.  This time period can be extended by the Court upon request of the Debtor.

7.7    The last day for filing of Administrative Claims, except for Claims for compensation and cost reimbursement of professional persons employed by the District which need not be filed, and Administrative Claims incurred in the ordinary course of business, shall be twenty (20) days after the Confirmation Date.

7.8    **Retention and Enforcement of Claims.**  Pursuant to §§901(a) and 1123(b)(3) of the Code, the Debtor may maintain and enforce any claims and/or rights of the Debtor.

7.9    **Court Fees.**  On or before the Effective Date, all fees (if any) due from the Debtor to the Clerk of the Court shall be paid in full.

7.10   **Implementation Reports.**  The Debtor's Bond Trustee shall prepare Implementation Reports at least annually, commencing one (1) year following the date of entry of an Order confirming the Plan, showing all receipts and disbursements. These Implementation Reports will be provided by the Bond Trustee to all DTC "participants" who may make written request therefor of:

> Ms. Shonda Coker
> Assistant Vice President
> and Trust Officer
> Bank of Fayetteville
> One South Block
> Fayetteville, AR 72701

the earlier of 90 days following the Confirmation Date or 30 days after Distributions are made to the holders of Allowed Claims under Class 1.

ARTICLE VIII.

**DISCHARGE**

8.1    **Discharge of Debts.**  Except as otherwise provided in the Plan, Confirmation of the Plan will discharge the Debtor from any and all Claims and Debts that arose prior to the Confirmation Date or portions thereof, and which are not to be paid under the terms of the Plan, whether or not: (1) a proof of Claim based on such Debt is filed or deemed filed under §501 of the Code: (2) such Claim is an Allowed Claim under §502 of the Code; or (3) the holder of such Claim accepts the Plan.

336575-v1                                                                                                                                      11

Distributions under the Plan will be the only distributions made upon Claims, and any and all sums owed thereon in excess thereof, as of the date of commencement of this Chapter 9 case shall be discharged.

8.2     **Judgments Obtained on Discharged Debts are Void.**  Pursuant to §§901(a) and 524(a)(1) of the Code, the Debtor's discharge upon Confirmation of the Plan under §944(b) of the Code, voids any judgments at any time obtained, to the extent that such judgment is a determination of liability of the Debtor with respect to any Debt discharged, whether or not discharge of such Debt is waived.

8.3     **Discharge Injunction.**  Pursuant to §§901(a) and 524(a)(2) of the Code, the Debtor's discharge upon Confirmation of the Plan under §944(b) of the Code shall operate as an injunction against the commencement or a continuation of an action, the employment of process, or an act to collect, recover, or offset any discharged Debt as a liability of the Debtor, whether or not discharge of such Debt is waived.

ARTICLE IX.

**MODIFICATION OF PLAN**

9.1     The Plan may be modified upon motion of the Debtor, or corrected by the Debtor prior to the Effective Date, without notice and a hearing and without additional disclosure pursuant to §1125 of the Code provided that, after notice to all parties who have filed and served a request for special notice in the Case, the Court finds that such modification does not materially or adversely affect any Creditor or any Class of Creditors.

9.2     At any time prior to Consummation of the Plan, the Debtor may seek Court authorization to remedy any defect or omission, reconcile any inconsistencies in the

Plan or in the Confirmation Order, or effect such other changes, modifications, or amendments as may be necessary to carry out the purposes and intent of the Plan.

## ARTICLE X.

## GENERAL PROVISIONS

10.1 **Jurisdiction.** The Court will retain jurisdiction until Consummation of the Plan or the entry of a Final Decree closing the Case. The Court shall further retain jurisdiction under the Plan for all purposes consistent with the Plan and the Code, which purposes include, but are not limited to:

10.1.1 The classification or allowance of a Claim of any Creditor and the re-examination of Claims which have been allowed for purposes of voting and the determination of such objections as may be filed against Creditors' Claims.

10.1.2 The determination of all causes of action, controversies, disputes or conflicts involving the right to participate in any Distribution under the Plan, whether or not subject to an action pending as of the Effective Date, between the Debtor and any other party.

10.1.3 The correction of any defect, curing of any omission, or the reconciliation of any inconsistency in the Plan or in the Order of Confirmation, as may be necessary to carry out the purposes and intent of the Plan.

10.1.4 The modification or amendment of the Plan after Confirmation pursuant to the Bankruptcy Rules or Code.

336575-v1

13

10.1.5  The enforcement and interpretation of the terms and provisions of the Plan.

10.1.6  The entry of any Order concluding or terminating the Case.

10.1.7  The granting of extensions of any deadlines set herein.

10.1.8  The administration of the Case, and implementation and Consummation of the Plan.

10.2  **Interpretation.**  To the extent that the terms of the Plan are inconsistent with the terms of any agreement or instrument concerning any Claim, or any other matter, the terms of the Plan shall control.

10.3  **Binding Effect.**  Upon Confirmation of the Plan, the Debtor, any entity acquiring property pursuant to the Plan, and all Creditors, whether or not such Creditor has filed a Claim or such Claim is deemed filed under §501 of the Code, and whether or not such Claim is allowed under §502 of the Code, and whether or not such Creditor has accepted the Plan, shall be bound by the provisions of the Plan pursuant to §944(a) of the Code.

10.4  **Applicable Law.**  The Plan is to be governed by and construed under the Code and the laws of the State of Arkansas, as may be applicable.

10.5  **Implementation Orders.**  At any time, the Court may make such Orders or give such direction as may be appropriate under §§945(a) and 1142(b) of the Code.

Respectfully submitted,

Siloam Springs Municipal Property Owners' Improvement District No. 1 – Gabriel Park
Debtor


By:     /s/ John T. Lee
    John T. Lee, Attorney
    P. O. Box 1348
    Siloam Springs, AR 72761
    Tel 479-524-2337
    Fax 479-524-3693
    jtlee.atty@cox-internet.com

    James N. McCord, Attorney
    217 East Dickson Street, Ste. 102
    Fayetteville, AR 72701
    Tel 479-695-1134
    Fax 479-442-1490
    Jimmccordlaw@gmail.com

ATTORNEYS FOR DEBTOR

## **CERTIFICATE OF SERVICE**

I, John T. Lee, Attorney herein, hereby certify that I have served a true and correct copy of the foregoing Chapter 9 Plan upon all creditors, parties in interest in this case by first class mail, postage prepaid, to each at their regular mailing address per the mailing matrix attached to the original of this Chapter 9 Plan, all on this 19th day of September, 2013.

                                                /s/ John T. Lee
                                                John T. Lee

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0861-5<br>Case 5:12-bk-73750<br>Western District of Arkansas<br>Fayetteville<br>Thu Sep 19 13:39:10 CDT 2013 | Arlands, LLC<br>2900 Percy Machin<br>North Little Rock, AR 72114-2144 | Siloam Springs Municipal Property Owners<br>217 East Dickson, Suite 102<br>Fayetteville, AR 72701-4629 |
| Fayetteville Division<br>U.S. Bankruptcy Court<br>35 E. Mountain St., Ste. 316<br>Fayetteville, AR 72701-5352 | Apex Clearing Corp.<br>1700 Pacific Avenue, Ste. 1400<br>Dallas, TX 75201-4607 | Arlands, LLC<br>c/o Stephen E. Whitwell, Atty<br>Hurley & Whitwell, PLLC<br>2900 Percy Machin Drive<br>North Little Rock, AR 72114-2144 |
| Arlands, LLC<br>c/o Stephen E. Whitwell, Attyq<br>Hurley & Whitwell, PLLC<br>2900 Percy Machin Drive<br>North Little Rock, AR 72114-2144 | CEDE & Company<br>55 Water Street<br>New York, NY 10041-0099 | Calvin Porter<br>818 Lakeland Point<br>Hot Springs National Park, AR 71913-7622 |
| Charles Schwab & Co., Inc.<br>Attn: Mimi O'Sullivan<br>2423 East Lincoln Drive<br>Phoenix, AZ 85016-1215 | Citigroup Global Markets<br>Attn: John Barry<br>700 Red Brook Blvd, Ste. 300<br>Owings Mills, MD 21117-5186 | Depository Trust Company<br>55 Water Street<br>New York, NY 10041-0099 |
| E*Trade Clearing, LLC<br>1981 Marcus Avenue, 1st Floor<br>Lake Success, NY 11042-1046 | Edward Jones & Co.<br>Attn: Nick Hummel<br>1255 Manchester Road<br>Saint Louis, MO 63131 | First Clearing, LLC<br>Attn: Kristie Daniel<br>One North Jefferson Street<br>Saint Louis, MO 63103-2205 |
| Frankie Bellora<br>4540 Oaklawn Estates Lane<br>Harrison, AR 72601-7857 | James N. McCord, Attorney<br>217 E. Dickson Street<br>Suite 102<br>Fayetteville, AR 72701-4629 | John Kapp, Chairman<br>Board of Commissioners<br>4909 Studer Road<br>Little Rock, AR 72223-9665 |
| John Shannon<br>P. O. Box 20678<br>Hot Springs National Park, AR 71903-0678 | John T. Lee, Attorney<br>P. O. Box 1348<br>Siloam Springs, AR 72761-1348 | Madelyn Ray<br>37 Robinwood Drive<br>Little Rock, AR 72227-2227 |
| Max Harris, Secretary<br>Board of Commissioners<br>Attn: Charles Hill<br>6 Rivermist Circle<br>Little Rock, AR 72202-1422 | Morgan Keegan & Co., Inc.<br>Attn: Carol Autley<br>50 North Front Street<br>Memphis, TN 38103-1199 | Patricia Turner<br>1978 CR 784<br>Mountain Home, AR 72653-8716 |
| Shonda Coker<br>Asst VP and Trust Officer<br>Bank of Fayetteville<br>One South Block<br>Fayetteville, AR 72701-6021 | Stephens, Inc.<br>Attn: Linda Thompson<br>111 Center Street, 4th Floor<br>Little Rock, AR 72201-4402 | Sterne, Agee & Leach, Inc.<br>Attn: Maribeth Williams<br>813 Shades Creek Parkway<br>Suite 100B<br>Birmingham, AL 35209-4459 |
| U.S. Trustee (ust)<br>Office Of U. S. Trustee<br>200 W Capitol, Ste. 1200<br>Little Rock, AR 72201-3618 | James N. McCord<br>Attorney at Law<br>217 E. Dickson St., Ste. 102<br>Fayetteville, AR 72701-4629 | John T. Lee<br>Attorney at Law<br>P. O. Box 1348<br>Siloam Springs, AR 72761-1348 |

Ward Jones
Ward Jones Realtors, Inc.
112 W. Tulsa
Siloam Springs, AR 72761-4054

End of Label Matrix
Mailable recipients    30
Bypassed recipients     0
Total                  30